<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CANDACE HIGGINS, <br><br> Plaintiff, <br><br> v. <br><br> NEWSMAX BROADCASTING LLC, *et al.* <br><br> Defendants. | Case No. 2:23-cv-03628 (BRM) (AME) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**[1]

Before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) filed by Defendants Maurice Rosenberg ("Rosenberg") and Corey Clayton ("Clayton") (collectively, the "Individual Defendants"[2]). (ECF No. 12; *see also* ECF Nos. 13, 14.[3]) Plaintiff Candace Higgins ("Plaintiff") filed an Opposition (ECF No. 24), and the Individual Defendants filed a Reply (ECF No. 26). Having reviewed the submissions filed in connection with the Individual Defendants' Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, the Individual Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED**.

---

[1] On November 29, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 28.)

[2] Corporate Defendant Newsmax Broadcasting LLC ("Newsmax") (together with Clayton and Rosenberg, "Defendants") filed an Answer in response to Plaintiff's Complaint (ECF No. 11) and is not a party to the Individual Defendants' Motion to Dismiss (*see* ECF No. 12).

[3] ECF No. 12 is the Individual Defendants' notice of motion for their Motion to Dismiss; ECF No. 13 contains the documents supporting the Individual Defendants' Motion to Dismiss, and ECF No. 14 is the Individual Defendants' memorandum of law in support of their Motion to Dismiss. (*See* ECF Nos. 12, 13, 14.)

1

I. **BACKGROUND**

A. **Factual Background**

For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court may also consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

This action arises out of alleged violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. 10:5-1, *et seq*. (*See generally* ECF No. 1-1.) Plaintiff is an individual residing in New Jersey and a former employee of Newsmax. (*Id.* ¶ 1.) Newsmax is a limited liability company with its principal place of business in Boca Raton, Florida.[4] (*Id.* ¶ 2.) Rosenberg is the Vice President of Human Resources for Newsmax.[5] (*Id.* ¶ 4.) Clayton is a Senior Director of Social Media at Newsmax and was Plaintiff's supervisor at Newsmax.[6] (*Id.* ¶ 5.)

---

[4] According to Defendants' Notice of Removal, "[t]he sole member of Defendant Newsmax Broadcasting LLC is non-party Newsmax Media, Inc., which is a corporation organized and existing pursuant to the laws of the State of Delaware, with its principal place of business located . . . [in] Boca Raton, Florida[.]" (ECF No. 1 at 2.) Therefore, the Court finds it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (holding that for purposes of diversity jurisdiction, "the citizenship of an LLC is determined by the citizenship of its members").

[5] The Individual Defendants note in their Motion that Plaintiff's Complaint fails to allege Rosenberg's citizenship nor the alleged jurisdictional basis for Rosenberg. (ECF No. 14 at 3 n.2.) They clarify that Rosenberg "resides within the State of Florida and works out of Newsmax's Boca Raton, Florida headquarters." (ECF No. 14 at 3 (citing Rosenberg Decl. ¶¶ 3, 5, 6).)

[6] The Individual Defendants note in their Motion that Plaintiff's Complaint fails to allege Clayton's citizenship nor the alleged jurisdictional basis for Clayton. (ECF No. 14 at 3 n.2.) They clarify that Clayton "resides within the State of Connecticut and works out of Newsmax's New York, New York offices." (ECF No. 14 at 3 (citing Clayton Decl. ¶¶ 3, 5, 6).)

In or around August 2021, Newsmax hired Plaintiff as an Associate Social Media Producer,[7] and Plaintiff worked at Newsmax from August 2021 through March 2023. (*Id.* ¶¶ 13, 15, 50.) Plaintiff alleges Defendants violated NJLAD when they refused her requests for reasonable accommodation to work remotely from her home in New Jersey and forced her to take an involuntary medical leave of absence following injuries she suffered in a car accident. (*Id.* at 2.) Plaintiff also alleges Defendants unlawfully terminated her employment "on the basis of her disabilities and in retaliation for her request for accommodation." (*Id.*)

On or about December 16, 2022, Plaintiff was in a car accident and suffered injuries as a result—specifically a herniated disc in her spine and ankle tendon tears. (*Id.* ¶ 17.) On December 27, 2022, Plaintiff received a doctor's note stating she "should work from home and avoid commuting to work" so as not to aggravate her injuries. (*Id.* ¶ 18.) Prior to the accident, Plaintiff was working a hybrid work schedule where she worked four days a week in Newsmax's New York, New York offices and one day a week from her home in Weehawken, New Jersey. (*Id.* ¶ 19.) Plaintiff alleges that, on or around January 3, 2023, while she was recovering from her injuries, Clayton asked her to cover a shift for Newsmax, which would have required Plaintiff to wake up at 3:00 a.m. (*Id.* ¶ 20.) Plaintiff responded asking Clayton "if anyone else on the team could take the shift who may have been a better fit to meet the intensity of live coverage." (*Id.* ¶ 21.) Clayton purportedly understood this as Plaintiff's refusal to work the requested shift and subsequently "unilaterally decided Plaintiff should take a medical leave of absence from work[,]" writing[8] "I've

---

[7] Plaintiff was initially hired at Newsmax as an Associate Social Media Producer but was later promoted to Social Media Producer. (ECF No. 1-1 ¶¶ 13, 15.)

[8] Plaintiff's Complaint does not specify where Clayton allegedly wrote this statement (*e.g.*, in an email, in a text message, in some kind of instant message, or otherwise), nor when this statement was allegedly sent to her.

3

decided it's best for you to take time off and focus on recovery from your car accident on Dec. 16." (*Id.* ¶ 22.) Plaintiff pushed back on this and voiced her opposition to this demand because she says she "was fully able to complete her job responsibilities in a remote fashion[.]" (*Id.* ¶ 23.) Clayton then referred Plaintiff to Rosenberg. (*Id.* ¶ 24.)

In an email dated January 3, 2023, the same day Clayton asked Plaintiff to cover the shift at Newsmax, Plaintiff sent an email to both Clayton and Rosenberg, stating "I feel like I am being retaliated against due to my temporary disability." (*Id.* ¶ 25.) Thereafter, Plaintiff was placed on an FMLA leave of absence against her wishes. (*Id.* ¶ 26.) On or around January 12, 2023, Plaintiff again voiced her opposition to her forced medical leave and stated she was willing to "work with reasonable accommodations, including working from home, an ergonomic chair, and a modified break schedule." (*Id.* ¶ 27.) Rosenberg responded that "[w]orking from home is not an option." (*Id.* ¶ 28.) On January 16, 2023, Plaintiff sent the Individual Defendants a doctor's note stating she should avoid commuting and work from home until February 27, 2023. (*Id.* ¶ 31.) After receiving this note from Plaintiff, Defendants agreed to permit Plaintiff to temporarily work remotely. (*Id.* ¶ 32.)

On or around February 23, 2023, Plaintiff sent the Individual Defendants an updated doctor's note reflecting the doctor saw Plaintiff on February 21, 2023 and requested Plaintiff be permitted to continue avoiding commuting and working from home for an additional six weeks until April 10, 2023. (*Id.* ¶ 34.) The next day, Rosenberg emailed Plaintiff stating that permitting her to continue working from home "would be an undue hardship on the business[.]" (*Id.* ¶ 36.) Plaintiff alleges Rosenberg made her "jump through hoops" for her requests for accommodations related to her temporary disability while insisting that Defendants were not retaliating against her. (*Id.* ¶ 40.) On March 7, 2023, Rosenberg informed Plaintiff that she had to return to work in person

at Newsmax's New York, New York location on March 13, 2023 and threatened that if she refused to return to work in person, she would be terminated. (*Id.* ¶¶ 42, 46, 49.) Plaintiff responded that due to her doctor's orders, she could not return to work in person, but could continue to complete her job responsibilities remotely. (*Id.* ¶¶ 48–49.) On March 10, 2023, Plaintiff's employment with Newsmax was terminated. (*Id.* ¶ 50.)

### B. Procedural History

On June 9, 2023, Plaintiff filed a Complaint against Defendants in the Superior Court of New Jersey, Hudson County, Law Division, captioned *Candace Higgins v. Newsmax Broadcasting LLC, et al.*, No. HUD-L-2044-23 (the "State Court Action"). (ECF No. 1-1.) In the Complaint, Plaintiff asserts two causes of action: "Disability Discrimination, Disparate Treatment, Failure to Accommodate, and Unlawful Termination" in violation of NJLAD (Count I), and "Retaliation/Improper Reprisal" in violation of NJLAD (Count II). (*Id.*) On July 6, 2023, Defendants filed a Notice of Removal, removing the State Court Action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1.) Defendants assert this action "involves a dispute between citizens of different states and the matter in controversy exceeds the sum of $75,000." (*Id.* at 1.) Defendants also state the Notice of Removal was timely filed within thirty days of service. (*Id.* at 2.) On September 25, 2023, the Individual Defendants filed a Motion to Dismiss the Complaint, pursuant to Rule 12(b)(2), for lack of personal jurisdiction. (ECF Nos. 12, 13, 14.) On October 23, 2023, Plaintiff filed an Opposition (ECF No. 24), and on October 30, 2023, the Individual Defendants filed a Reply (ECF No. 26). On November 29, 2023, this action was reassigned to the undersigned from The Honorable Kevin McNulty, U.S.D.J. (ECF No. 28.)

## II.   LEGAL STANDARD

A plaintiff bears "the burden of demonstrating facts that establish[] personal jurisdiction."

5

*Fatouros v. Lambrakis*, 627 F. App'x 84, 86–87 (3d Cir. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). "In reviewing a motion to dismiss for lack of personal jurisdiction, a court 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Smith v. Zimmer US, Inc.*, Civ. A. No. 19-06863, 2020 WL 487029, at *1 (D.N.J. Jan. 29, 2020) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)). "But when a defendant raises a jurisdictional defense, 'a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.'" *Id.* (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). In determining whether it has personal jurisdiction, the Court is not bound by the pleadings, *see id.*, and, to the extent they are material, will include relevant allegations pertaining to jurisdiction in its summary of the facts, while construing all disputed facts in favor of the plaintiff. *Carteret Sav. Bank*, 954 F.2d at 142 n.1.

Pursuant to Federal Rule of Civil Procedure 4(k), a federal district court may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007). New Jersey's long-arm statute permits the exercise of personal jurisdiction over non-resident defendants to the fullest extent as allowed under the Fourteenth Amendment of the United States Constitution. N.J. Ct. R. 4:4-4; *Eaton Corp. v. Maslym Holding Co.*, 929 F. Supp. 792, 796 (D.N.J. 1996). In other words, this Court's jurisdiction is "constrained, under New Jersey's long-arm rule, only by the 'traditional notions of fair play and substantial justice,' inhering in the Due Process Clause of the Constitution." *Carteret Sav. Bank*, 954 F.2d at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Miller Yacht Sales, Inc. v. Smith*,

6

384 F.3d 93, 96 (3d Cir. 2004) (citing *Carteret Sav. Bank*, 954 F.2d at 149).

The Supreme Court has defined two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). General jurisdiction requires continuous and systematic contacts and exists in "situations where a foreign corporation's 'continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (alteration in original) (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliation with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also Int'l Shoe Co.*, 326 U.S. at 317. While the Supreme Court has not ruled out the possibility an individual could be subject to general jurisdiction because of "continuous and systematic contacts" with the forum, the Court has applied general jurisdiction only to corporate defendants. *Goodyear Dunlop Tires Ops.*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; *for a corporation*, it is an equivalent place, *one in which the corporation is fairly regarded as at home*." (emphasis added)). "It may be that whatever special rule exists permitting 'continuous and systematic' contacts . . . to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations." *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 n.1 (1990) (citations omitted).

Specific jurisdiction, however, may be established over a defendant who "has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

7

472–73 (1985) (citations omitted). More specifically, specific jurisdiction requires: "(1) the defendant purposefully directed its activities at the residents of the forum, (2) the claim arises out of or relates to those activities, and (3) the assertion of personal jurisdiction is reasonable and fair." *WAG Acquisition, LLC v. Multi-Media, LLC*, Civ. A. No. 14-01661, 2015 WL 5310203, at *12 (D.N.J. Sept. 10, 2015) (citation omitted); *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (stating "what is necessary [for specific jurisdiction] is a deliberate targeting of the forum" (citation omitted)).

A court's exercise of personal jurisdiction "requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *see also O'Connor*, 496 F.3d at 316–23 (discussing the three-step process to determine personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[T]he state of a plaintiff's residence does not on its own create jurisdiction over nonresident defendants." *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007). Rather, "[j]urisdiction is proper when the state of a plaintiff's residence is 'the focus of the activities of the defendant out of which the suit arises.'" *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)).

Moreover, "the minimum contacts inquiry must focus on 'the relationship among the

8

defendant, the forum, and the litigation.'" *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1255 (N.J. 1989) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297–98). Indeed, the three-part inquiry is meant to ensure that an out-of-state defendant will not be haled into court based on "random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person[.]" *Croat v. Mission Fine Wines, Inc.*, Civ. A. No. 19-17786, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (quoting *Stevens v. Welch*, Civ. A. No. 10-03928, 2011 WL 541808, at *3 (D.N.J. Feb. 7, 2011)). The plaintiff "bears the burden of demonstrating [that] contacts with the forum state [are] sufficient to give the court *in personam* jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990) (alterations in original) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984)).

### III. DECISION

The Individual Defendants argue Plaintiff's Complaint should be dismissed as against them for lack of personal jurisdiction, pursuant to Rule 12(b)(2), because: (1) neither of them reside in the State of New Jersey; (2) neither of them have ever worked out of a Newsmax office or location within the State of New Jersey; (3) Newsmax is a limited liability company with its principal place of business in Boca Raton, Florida and does not maintain, and has never maintained, an office or location in the State of New Jersey; (4) Rosenberg resides in Florida and works out of Newsmax's Boca Raton, Florida headquarters; (5) Clayton resides in Connecticut and works out of Newsmax's New York, New York offices; and (6) the only connection between the Individual Defendants and the State of New Jersey is that Plaintiff resided in New Jersey at the time of the alleged discriminatory conduct, and such limited and undirected contacts are insufficient to confer

personal jurisdiction over them. (ECF No. 14; *see also* ECF No. 26.) Additionally, the Individual Defendants contend Plaintiff failed to meet her burden of establishing jurisdiction over them because she did not offer any evidence supporting jurisdiction over them in New Jersey and instead solely relies on the conclusory allegations in her Complaint, which are insufficient to establish jurisdiction over them, even if accepted as true. (ECF No. 26 at 2–3.) The Individual Defendants further assert that Plaintiff has not cited any case law, nor are they aware of any, which stands for the proposition that individual employees of a corporate defendant who have no personal connection to the state (here, New Jersey) avails themselves of the jurisdiction of that state simply by sending communications to a co-worker while she is physically present in New Jersey. (*Id.* at 9.)

In opposition, Plaintiff argues she "has pled sufficient facts to support personal jurisdiction over Defendants Rosenberg and Clayton such that hauling them into [] Court [] will not offend traditional notions of fair play and substantial justice." (ECF No. 24 at 1.) Specifically, Plaintiff contends she had numerous email communications with both Clayton and Rosenberg regarding her alleged forced medical leave and remote working options. (*Id.* at 2–7, 14.) Plaintiff asserts that despite the Individual Defendants' lack of physical presence in New Jersey, they "deliberately directed" their communications to New Jersey in communicating with her and attempting to force her to return to work in person, and therefore "a finding of personal jurisdiction would be proper." (*Id.* at 14.) Plaintiff further states Rosenberg and Clayton's certifications show that while neither of them made the final decision to terminate her employment, they were both involved in that decision. (*Id.* at 14–15.) Additionally, Plaintiff asserts the burden placed on the Individual Defendants is "hardly significant" and that they "could easily take a flight (or drive) into New Jersey as necessary to participate in this lawsuit." (*Id.* at 16.)

Plaintiff concedes that the Court does not have general jurisdiction over the Individual Defendants. (*See id.* at 9.) Therefore, the Court only addresses whether it has specific jurisdiction over the Individual Defendants. Plaintiff bears the burden of demonstrating the Individual Defendants are subject to specific personal jurisdiction. *Dayhoff Inc.*, 86 F.3d at 1302.

"Determining whether specific jurisdiction exists involves a three-part inquiry." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007)). "First, the defendant must have '"purposefully directed" his activities' at the forum." *Id.* (quoting *Burger King*, 471 U.S. at 472). "Second, the plaintiff's claim must 'arise out of or relate to' at least one of those specific activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414). "Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise 'comport[s] with "fair play and substantial justice."'" *Id.* (alteration in original) (quoting *Burger King*, 471 U.S. at 476). "Because this analysis depends on the relationship between the claims and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis." *Id.* (citing *Remick v. Manfredy*, 238 F.3d 248, 255–56 (3d Cir. 2001)).

Additionally, the Third Circuit has held that *Calder v. Jones*, 465 U.S. 783 (1984), allows plaintiffs to demonstrate personal jurisdiction if they show:

> (1) The defendant committed an intentional tort;
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*Id.* at 297 (quoting *IMO Indus. v. Kiekert AG*, 155 F.3d 254, 265–66 (3d Cir. 1998)). "If a plaintiff satisfies these three elements, known collectively as the 'effects test,' the plaintiff can demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone

11

. . . are far too small to comport with the requirements of due process' under our traditional analysis." *Id.* (alteration in original) (quoting *IMO Indus.*, 155 F.3d at 259). "Even if a defendant's conduct could cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state"; rather, "[t]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (second alteration in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 297). Further, "the Supreme Court has clarified that the minimum contacts analysis, even under *Calder*, must relate to the 'defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there' and that 'the plaintiff cannot be the only link between the defendant and the forum.'" *Tripp v. Ascentage Pharma Grp. Int'l*, Civ. A. No. 22-05934, 2023 WL 5425506, at *4 (D.N.J. Aug. 23, 2023) (quoting *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014)). The Third Circuit has "consistently emphasized that [the effects test of] *Calder* should be applied narrowly.'" *Marks v. Alfa Grp.*, 369 F. App'x 368, 370 (3d Cir. 2010) (citations omitted).

Here, Plaintiff has failed to meet her burden of showing specific personal jurisdiction exists over the Individual Defendants because she has not sufficiently alleged, or otherwise shown, that the Individual Defendants "'purposefully directed' [their] activities at residents of the forum" and that her claim "'arise[s] out of or relate[s] to' those activities." *Burger King*, 471 U.S. at 474; *Metcalfe*, 566 F.3d at 334. In other words, Plaintiff "has failed to establish the requisite 'purposeful availment' necessary for a finding of specific jurisdiction." *Croat*, 2020 WL 1921955, at *4. Plaintiff's residence in New Jersey alone is insufficient to find personal jurisdiction over individual employees of her former employer who do not have any other connection to New Jersey. *See Tripp*, 2023 WL 5425506, at *4.

12

Cases in this District have found "that a remote worker based in New Jersey does not automatically confer personal jurisdiction over the out-of-state employer[.]" *Castillero v. Xtend Healthcare, LLC*, Civ. A. No. 22-02099, 2023 WL 8253049, at *11 (D.N.J. Nov. 29, 2023); *see Tripp*, 2023 WL 5425506, at *4 ("An employee who works remotely from a home office, like [plaintiff here], does not automatically subject his employer to the jurisdiction of his home state."); *see also Crosson v. TMF Health Quality Inst.*, Civ. A. No. 20-18800, 2023 WL 2609048, at *6 (D.N.J. Mar. 23, 2023); *Magill v. Elysian Glob. Corp.*, Civ. A. No. 20-06742, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021).

For example, in *Croat v. Mission Fine Wines, Inc.*, the plaintiff argued specific jurisdiction existed because the New York-based defendant allowed her to work from her home in New Jersey one day a week. 2020 WL 1921955, at *4. The court disagreed and granted defendant's motion to dismiss for lack of personal jurisdiction, finding that plaintiff "made the personal choice of working from her residence at times when [d]efendant did not require [her] to work in either of its offices, *i.e.*, New York or Pennsylvania" and that those "were unilateral decisions by [p]laintiff and not the result of deliberate direction or requirement by [d]efendant" and therefore insufficient for specific jurisdiction over the out-of-state-based defendant. *Id.*

Similarly, in *Crosson v. TMF Health Quality Institute*, which involved an employment dispute arising from alleged retaliation in violation of NJLAD, the plaintiff argued specific jurisdiction existed because: (1) the out-of-state-based defendants hired him as a remote employee; (2) he worked almost exclusively from his office in New Jersey; (3) he alleged the "[d]efendants engaged in continuous phone calls, letters, videoconferences calls, and emails to [him] while he was in New Jersey"; (4) "it was an express and substantial condition of [his] employment that he work from his office in New Jersey"; and (5) the defendants provided him with remote access

13

software and a company-issued laptop so he could work from his home office in New Jersey. 2023 WL 2609048, at *5. However, the defendants in *Crosson* contended no specific jurisdiction existed over them because: (1) they consisted of a non-profit corporation with its principal place of business in Texas and several individuals who were all citizens of Texas; (2) they had never had an office in New Jersey; (3) they conducted no business in New Jersey; (4) the plaintiff was a remote employee based exclusively out of the non-profit defendant's office in Texas; and (5) "all in-person meetings and events in which [p]laintiff participated during his employment with [the non-profit defendant] occurred in Texas." *Id.* at *4–5. The *Crosson* court agreed with the defendants and found the plaintiff was the defendants' only connection to New Jersey and that the plaintiff's specific allegations "fall short of demonstrating that [d]efendants conducted any business in New Jersey or targeted New Jersey in any purposeful way beyond permitting [p]laintiff to work remotely as a matter of his own convenience." *Id.* at *5–6.

Conversely, in *Castillero v. Xtend Healthcare, LLC*, the court found specific jurisdiction existed over a corporate defendant (a Tennessee-based company) who hired a New Jersey resident "to work from her home in New Jersey as a bilingual customer service representative for [the company's] COVID-19 virtual call center that served residents in the State of New Jersey." 2023 WL 8253049, at *11. There, the court reasoned the company purposefully availed itself of New Jersey by hiring a New Jersey-based employee as a fully remote worker to work in New Jersey at its virtual call center in order to service New Jersey residents. *Id.* The *Castillero* court also noted that "'New Jersey has a strong interest in protecting its residents' in employment-related actions and that '[t]his need for protection is all the more true for New Jersey citizens working remotely for out-of-state employers.'" *Id.* (alteration in original) (quoting *Chadwick v. St. James Smokehouse, Inc.*, Civ. A. No. 14-02708, 2015 WL 1399121, at *6 (D.N.J. Mar. 26, 2015)).

14

In *Chadwick v. St. James Smokehouse, Inc.*, the court likewise concluded specific jurisdiction existed over two Florida-based defendants (one corporate and one individual) because the court found the defendants "purposefully availed" themselves of New Jersey by engaging in the following conduct: (1) the corporate defendant had done business with New Jersey businesses "on numerous occasions"; (2) the individual defendant admitted "he once had to appear in a small claims proceeding in New Jersey on behalf of [the corporate defendant] in order to resolve an unpaid debt with a New Jersey customer"; (3) defendants hired the plaintiff to be their "principal buyer and continuously relied on [p]laintiff to perform essential functions of its business from a remote office located in New Jersey"; (4) the defendants "engaged in continuous business phone and email interactions with [p]laintiff for almost two years" and "[i]n the course of their dealings with [p]laintiff, [they] offered to purchase and ship [] office equipment to [p]laintiff in New Jersey"; and (5) the individual defendant "made the phone call to the forum state to terminate [p]laintiff." 2015 WL 1399121, at *4–5.

Here, unlike the plaintiff in *Chadwick*, Plaintiff was not hired to perform "essential functions" of Newsmax's business from a remote office located in New Jersey, and Plaintiff has not alleged any facts as to the Individual Defendants similar to those regarding the individual defendant in *Chadwick*. Further, the Individual Defendants do not work (and have never worked) in New Jersey as Newsmax does not have any offices, remote or otherwise, located in New Jersey. Similarly, unlike the plaintiff in *Castillero*, Plaintiff was not hired as a fully remote worker, nor was she hired to specifically service New Jersey residents. Rather, she was hired as an employee for Newsmax's New York, New York location. Indeed, as the Individual Defendants note, Plaintiff's Complaint is "premised on the allegation that Newsmax *refused her request to work remotely* from home following her accident and subsequently terminated her for refusing to return

15

to the office[,]" and if Plaintiff had been hired as a remote employee, there would have been no need for her "to request a reasonable accommodation of remote work." (ECF No. 26 at 4 (emphasis added).) Plaintiff has not sufficiently alleged, nor otherwise shown, that the Individual Defendants have purposefully availed themselves of New Jersey in the same way that the defendants in *Chadwick* and *Castillero* did. *See also Tripp*, 2023 WL 5425506, at *4–6 (granting motion to dismiss for lack of specific personal jurisdiction in a case alleging, *inter alia*, disability discrimination and unlawful retaliation in violation of NJLAD where the court found that although the plaintiff "worked remotely from his home in New Jersey, paid New Jersey taxes, collected New Jersey unemployment and disability benefits, received office equipment from [his out-of-state-based employer], and stored business-related documents in his home, those actions were not particular to New Jersey and could have occurred in any state" where the plaintiff chose to work, and concluding the foreign employer had "not purposefully availed itself of the New Jersey forum under *O'Connor* (or expressly aimed its alleged tortious conduct at the New Jersey forum under *Calder*)"); *Magill*, 2021 WL 1221064, at *7 (granting motion to dismiss for lack of personal jurisdiction where the court found that the plaintiff's physical location in New Jersey was the only factor that connected the dispute to New Jersey and noting "[p]laintiff's claims against [d]efendants would be identical if he lived anywhere else in the world" as "[a]ll of [p]laintiff's work and the entire nature of [d]efendants' business was performed online with world-wide scope"); *Parliament Import Co. v. Gibson Wine Co.*, 537 F. Supp. 75, 76 (E.D. Pa. 1982) ("The law is clear that an individual's transaction of business solely as an officer or agent of a corporation does not create personal jurisdiction over that individual. 'Whether the cause of action asserted against the individual is for breach of contract or for tortious actions, if the individual was functioning in the role of corporate officer or agent, he cannot become subject to the court's

16

jurisdiction on the basis of those activities.'" (quoting *Feld v. Tele-View, Inc.*, 422 F. Supp. 1100, 1104 (E.D. Pa. 1976)).

Further, while Plaintiff alleges that she worked from home one day per week prior to her accident, she does not allege that the Individual Defendants directed her to do this. Rather, it appears Defendants allowed her to work from home one day per week as a matter of convenience to her and if she so chose. Therefore, the facts here are more closely aligned with those in *Croat* and *Crosson* where the courts found plaintiff's allegations insufficient to show personal jurisdiction over the defendant employers who permitted the plaintiffs to work remotely from their homes in New Jersey part-time. In those cases, the courts found that such convenience-based remote work arrangements were insufficient to show specific personal jurisdiction over the employers who permitted them, absent any other allegations or evidence showing the employers purposefully targeted or availed themselves of New Jersey. *See Crosson*, 2023 WL 2609048, at *5–6; *Croat*, 2020 WL 1921955, at *4. The other cases Plaintiff cites to in support of her argument that specific jurisdiction exists over the Individual Defendants (*see* ECF No. 24 at 9–13) are factually distinguishable from the facts here.

Additionally, Plaintiff did not submit any affidavits or other evidence in connection with her opposition to the Individual Defendants' Motion and accordingly has failed to meet her "burden of proving by affidavits or other competent evidence that jurisdiction [over the Individual Defendants] is proper.'" *Smith*, 2020 WL 487029, at *1 (quoting *Dayhoff Inc.*, 86 F.3d at 1302). The Individual Defendants have never resided in New Jersey, have never owned any property in New Jersey, have never worked in New Jersey, have never met Plaintiff in person in New Jersey (with regard to her employment at Newsmax or otherwise), and were never physically present within New Jersey during any telephone or email communication with Plaintiff (whether in

17

relation to her employment at Newsmax or otherwise). (ECF No. 26 at 1–2, 8; *see also* ECF Nos. 13-3, 13-4.) Indeed, Plaintiff has not alleged otherwise nor produced any evidence showing otherwise. These facts, absent other allegations or evidence that the Individual Defendants purposefully targeted New Jersey, are insufficient to confer specific personal jurisdiction over the Individual Defendants in New Jersey.

Therefore, the Court finds it lacks specific personal jurisdiction over the Individual Defendants, and accordingly the Individual Defendants' Motion to Dismiss Plaintiff's Complaint as against them for lack of personal jurisdiction is **GRANTED**.[9] However, the Individual Defendants' accompanying request for costs associated with this action including, but not limited to, reasonable attorneys' fees (ECF No. 14 at 1; ECF No. 26 at 1) is **DENIED WITHOUT PREJUDICE**, with leave to renew via motion at a later date, if warranted. *See Abbott v. Tacconelli's Pizzeria, LLC*, Civ. A. No. 10-01901, 2010 WL 3359533, at *2 n.4 (D.N.J. Aug. 24, 2010) ("The current motion before the Court is [d]efendants' motion to dismiss, so the Court will not make a determination as to whether [d]efendants are entitled to attorneys' fees or litigation expenses because it not proper for the Court to decide this issue at present.").

## IV.    CONCLUSION

For the reasons set forth above, the Individual Defendants' Motion to Dismiss (ECF No. 12) is **GRANTED**, and Plaintiff's Complaint (ECF No. 1-1) is **DISMISSED WITHOUT PREJUDICE** as against the Individual Defendants. The Individual Defendants' accompanying request for costs associated with this action including, but not limited to, reasonable attorneys'

---

[9] To be clear, the Court herein is solely addressing personal jurisdiction over the Individual Defendants, *not* Newsmax who is not a party to this Motion and has not contested jurisdiction over it.

fees (ECF No. 14 at 1; ECF No. 26 at 1) is **DENIED WITHOUT PREJUDICE**. An appropriate

Order follows.

Dated:  June 20, 2024

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
UNITED STATES DISTRICT JUDGE